Maurice Verstandig, on behalf of Roee and Adil Kiviti, the appellants herein. Your Honor, when money is obtained through false pretenses and there is a legal justification for a return of that money, no matter the legal justification, the ensuing obligation is not dischargeable in bankruptcy pursuant to Section 523A2 of the Bankruptcy Code. Before I delve into the bankruptcy idiosyncrasies, though, I want to touch upon the jurisdictional inquiry. We obviously received the request for supplemental briefing, and we obviously appreciate that the Court needs to be assured of its jurisdiction before it can touch upon the merits of the appeal. I believe the Court has proper appellate jurisdiction, as did the U.S. District Court for the Eastern District of Virginia, for the simple reason that there is a final order in this case and that there is no separate rationale to deny the Court of that jurisdiction. And I'll point to the two cases that were chiefly noted in the order for supplemental briefing, starting with the Supreme Court's opinion in Microsoft. The most critical part of that case in analyzing this case isn't the majority opinion, which delves into the idiosyncrasies of class certification and what happens when one wishes to appeal a denial of class certification, but rather the concurrence. Justice Thomas, joined by Chief Justice Roberts and Justice Alito, notes that there's nothing about Rule 23 that governs what is or is not a final order. Very familiarly, you have a final order when there's nothing left for the trial court to do. And looking at the facts of this case, there's no question but that there was nothing left for the bankruptcy court to do in the prism of the adversary proceeding. Once the first count was dismissed by the court and the second count was dismissed by the court. But the rub there is right. There was nothing left to do, but only because you manipulated the system. I don't mean that in a bad way. Some people use the word manipulation. I don't mean that this is not a disparagement, right? But Microsoft says you don't get to manipulate the system to sort of put a claim on hold subject to reopening it in order to get your appeal, right? And that – I mean, that looks precisely like what was done here. I don't mean to say you, but what was done. Your Honor, it was me. I will take full – I called it Mr. Fasano, we struck a deal, and that was that. We were trial counsel, not that there was a trial. I will say this. I don't think manipulating the system, and I'll use that verbiage, in this case is a bad thing for three reasons. One, the case was moot. There was actually an absence of subject matter jurisdiction. Once the district – I don't follow that. I know you said that in your briefs, and so maybe you can explain it in a way that's different than you explained in your brief, because I thought this is a case – it was wrong. It's not a no-asset case. It is an asset case. And if – I understand that you'd rather it not be dischargeable, but how does the fact that it's dischargeable moot the claim for the money? Yes, Your Honor. This is a bankruptcy quirk that admittedly stretches the imagination and for which I fully blame Congress. In the rest of the known universe, or at least the United States, a claim is established by obtaining a monetary judgment and going to collect thereupon. In the bankruptcy world, pursuant to Federal Rule of Bankruptcy Procedure 3001, a claim is established by filing a proof of claim, and subsection F thereof establishes that the proof of claim filed in the bankruptcy court is prima facie evidence of the validity thereof. And your proof of claim stands as your claim against the bankruptcy estate for purposes of any peripatsu distribution that may be had down the road, unless and until objected to. Until what? Unless and until objected to. There's a mechanism to object to proofs of claim. My clients filed a proof of claim. No one has ever objected to my client's proof of claim. So in the very narrow universe of the Bankruptcy Cases Administration, when it comes time for the trustee to say, and I'm making up these numbers, I have collected $100, and I need to know who gets which piece of it, my client's claim is simply cemented, and the trustee's distributions can and will be determined. Now, in the rest of the known universe, outside of the trustee's distribution in the bankruptcy case, we look what we traditionally look to, which is a judgment. But if the judgment is discharged, there's no point in proceeding. There's no point in having a trial to determine how much Mr. Bott owes Mezzers that money, and if Mezzers-Covitti would be violating the discharge injunction of the bankruptcy code by so much as endeavoring to collect upon that judgment. And there's ample case law for the proposition that a bankruptcy discharge does moot an ongoing effort to seek a judgment against the debtor who receives the discharge. Judge Rushing, I don't know if that answers your question or not, but... I'm still pretty confused. Okay. Because he does, I mean, it's not that they're saying, even if they don't collect on it all, they can get some piece of the pie. Yes, and they can still get some piece of the pie with the adversary dismissed. So had my clients never filed an adversary complaint against Mr. Bott, had they simply shown up and said, you know what, we think it probably is dischargeable and there's no point in getting a judgment, which, to be clear, is not their thought process, and they just filed a proof of claim, they would still get the piece of the pie. They don't need to, you don't need a judgment to file a proof of claim. Actually, much to the contrary, bankruptcies are very often filed on the eve of a trial or on the eve of a judgment or somewhere along the way where someone doesn't wish to be subject to the realm of a U.S. district court or a state court. So it is not unusual for creditors to go into bankruptcy without a formal judgment. But then, I mean, I take your point. It makes it, why bother? You know, it's just efficient. But the point is, you did bother and you voluntarily dismissed it without prejudice and you're retaining the right to reassert it if we rule in your favor on appeal on the other count. Yes, Your Honor. And we bothered for a couple of reasons, but the most notable is efficiency. So my clients had already sued Mr. Bott in the District of Columbia Superior Court. In fact, there was a clerical default entered, and it was before a judgment upon that default could be entered that Mr. Bott sought bankruptcy protection in the Eastern District of Virginia. So my clients found themselves in the situation of needing to establish that the judgment would not be dischargeable in bankruptcy and needing a mechanism to reduce that obligation to an actual judgment that could then be collected upon after the automatic stay imposed by Mr. Bott's bankruptcy lapsed, expired, was waived, released, whatever it may be. There seemed to be a judicial economy in bringing it with the adversary proceeding. There were, in reality, two almost identical cases pending in two courts at the same time, but that made sense. To show a lack of dischargeability, we were going to have to touch upon the merits of what had happened and put on evidence in support of what had or had not happened. So it seemed to be judicially economical to, at the same time, seek the liquidation of the judgment. Once there was no way to have a judgment that could be collected upon, though, we were left with nothing. Even when we went back to the D.C. Superior Court action, we're left with nothing because we can't collect on a judgment. We can't even ask the D.C. Superior Court to enter a final default or we'd be violating the discharge injunction. And I think this goes to this circuit's core. Let me understand that. Right? So I totally get that. Right? So I think I agree with basically everything you just said, right, that it makes a lot of sense, it creates efficiency, and it'd be a good idea. Yes. Right? The challenge is, like, none of those, like, govern. Right? We've got to have a final order in a proceeding. And Microsoft tells us you don't create one by voluntarily dismissing a claim because practically it's not going to have, you know, an effect. Right? I mean, that's the... And, you know, Affinity carves out this little narrow exception to Microsoft. One might say just sort of recognizes a narrow exception to Microsoft where the court's ruling legally eliminates the other claims. Right? As a legal mandate. But this is just a practical problem, not a legal one. That's where I'm rubbing. I actually think it is a legal one, Judge Richardson, and I think that's why it falls within the ambit of the, I love that the Affinity Living Group standard is the doomed standard. Your claims must be doomed as a matter of law. And my client's remaining claims were doomed as a matter of law because not only was there wholesale mootness, right? There was no case or controversy left. There was nothing to pursue. Which I would argue means the bankruptcy court actually lacked subject matter jurisdiction. But let's assume there was subject matter jurisdiction. And let's assume that we did go to trial. Now, my client's claims could not have ever had any material or legally cognizable benefit to them, detriment to the other side, or impact upon the world as we know it. If they received the judgment, they could not collect on it, they could not use it to attach an asset, leave it upon asset, or even call up Mr. Bott and try to politely negotiate a payment plan. And if they didn't receive the judgment, the same exact thing would happen. They wouldn't have a judgment to collect upon, they wouldn't have anything to leave it upon. Does it matter that the, from a timing perspective, that the bankruptcy decision was not made yet? So in other words, the debts of the debtor had not yet been discharged? Your Honor, I believe the debts of the debtor had been discharged at the time that the bankruptcy court dismissed our dischargeability claim, and they certainly had been discharged by the time we entered into the joint stipulation. In the supplemental briefing, I attached the underlying bankruptcy docket as opposed to merely the adversary docket, as I suppose a supplemental appendix, and it notes the date of the discharge. I believe Mr. Fasano did the same. There's roughly a year's time between when the debtor received his discharge and when we entered into the stipulation and dismissal. But I will take your question the other way around. If the debtor had not yet received his discharge, then it would matter a great deal. Then there would be a case in controversy, and then there would be equal utility in pursuing the matter through the adversary proceeding or waiting to pursue it through G.C. Superior Court. And I'm not sure that I would be as confident in my standing as I argue here today if the Does it matter that that was – help me with the trustee sort of finding error with the assets. How does that play into that story? I don't think it actually materially impacts this, because I think that solely goes to the trustee's distribution in the bankruptcy estate. And as I had begun to argue earlier in response to Judge Rushing's question, that's really So I think that is actually something of a red herring for analytical purposes. If my clients filed a proof of claim, which they did, and the debtor wished to take issue with it in the very narrow prism of the bankruptcy world, the debtor's prerogative actually would be to object to our proof of claim. Merely challenging our adversary proceeding to liquidate it to a judgment would not be sufficient. And under Rule 3001F, our proof of claim is the prima facie validity. The fact that this is a case that rocked back and forth where the trustee thought there was nothing and then found nothing, and the saga still goes on, I believe is ultimately immaterial to the posture of the adversary case and to the appellate jurisdiction that stems therefrom. And is the debtor precluded at this point from objecting to your proof of claim? I believe the debtor is pragmatically precluded at this point. Yet pragmatically precluded, right? They don't have an interest. But the question is, or the trustee, can anybody object to your proof of claim at this point? Any party in interest would have been able to object to our proof of claim without looking at the docket. We need to see if certain things have happened. But what I would note would be any objection to our proof of claim would be a freestanding proceeding in the bankruptcy case, unless and until consolidated with the adversary proceeding. And there certainly was no objection here, no consolidation here, et cetera. I recognize that there could be certain res judicata impacts and estoppel impacts that would stem from that. But there was no objection, and actually part of the stipulation of dismissal entered into observed that there had been no objection to my client's proof of claim, which is why we believed we were liquidated for purposes of the bankruptcy. And if we weren't able to liquidate a judgment for external purposes, there was no point of moving forward in the adversary. How much money is involved here? Your Honor, the grand sum of $58,770. And if I may back up a second, if someone were to object to the proof of claim, it would be in the bankruptcy where all parties in interest are on notice and where everyone has the ability to then file an opposition, be heard at a hearing, et cetera. It's worth noting, though, in the narrow lens of the adversary, the only parties were my client and Mr. Pisano's client. So there is a somewhat different posture to how those two things would have been approached. But if you've liquidated the claim, then an objection to your proof of claim is unlikely to go anywhere. The court has already adjudicated that in the adversary proceeding. Your Honor, in context external to this case, I take great pride in my ability to creatively object to people's proofs of claim. And there are many grounds upon which it can be done. But yes, it is certainly a much stronger proof of claim if buttressed by an enforceable judgment than if not buttressed. I see I'm out of time, and I'll reserve for rebuttal, having perhaps not reached the merits of the appeal itself. Thank you, Counsel. Yes, I should say, good afternoon, Your Honor. Thank you. May it please the Court. Justin Pisano for Naveen Bhatt, the appellee in this case. Your Honor, the procedural in this question, the procedural issues in this case are a bit awkward. Both Mr. Versanding and I are arguing the opposite positions, as we argued in the bankruptcy court. Indeed. Yes. We — I originally moved to dismiss both counts, the first, the substantive count, count one, for lack of jurisdiction, because at the time, it was a no-asset case, and there was no point to adjudicating it. And we moved to dismiss the non-dischargeability account because we alleged they could not allege proximate cause. We won on the non-dischargeability count, but by that time, the trustee had found the assets. He had arranged to buy out my client's equity in an LLC. And because there were assets, as Mr. Versanding argued in his opposition in the bankruptcy court, then there was actually something to argue about over count one. Now, there was going to be an adjudication of the amounts that were owed to Mr. Caviti because they had filed a proof of claim. And any — and we filed an answer to the complaint after we lost on the motion to dismiss count one. So we contested liability, not just non-dischargeability. And so there was an active dispute, and frankly, my client does not have the resources that Mr. Versanding's clients have. And it would have made — it would have been quite burdensome, financially burdensome, for my client to have to take that case to trial. And so we tried to come up with a creative solution. I had not read Microsoft v. Baker at that time. And we tried to come up with a way where we could present the court with this case without having to go through two trials. And so this is what we came up with. And having read Microsoft v. Baker, it does seem like this is a case where the — where it was certainly inefficient to try count one before the bankruptcy court, but it was not legally doomed. It was not a case within the framework of the Affinity Living Group case. They could have been successful on their — on count one, the violation of D.C. municipal regulation 16.1-800. But they could have been successful on that count without being successful on count two, that my client lied about having that license, giving rise to the liability. So it is in almost on all fours with the Microsoft case. Microsoft case was a class action based on scratched disks. They were asserting that the Xbox software consoles were scratching the plaintiff's disks. And no plaintiff wants to take that case to trial individually. And the Covetes didn't want to take this case to trial just for purposes of determining their proof of claim. What's your thought on the mootness theory that — I don't know if it's mootness or lack — that the court actually lacked jurisdiction once the debt was not dischargeable. Your friend on the other side says once the court ruled that the debt was — sorry, was dischargeable, then it was moot to decide count one because we have a proof of claim and the debts had already been discharged. It would not have been moot. It would have been moot if there were no assets. But since there were assets, it is not moot because the adjudication of that complaint would be res judicata for determining whether or not the proof of claim was allowed. So we would have, theoretically, litigated this to full judgment on the liability issue, not the non-dischargeability issue. And then I would have — if I won, I would have filed an objection to the proof of claim. And if I lost, the proof of claim would just stay allowed. But it's certainly not moot. And in fact, that was the argument that the Covetes made in their opposition to the motion to dismiss was that it was not moot because there was a proof of claim on that. Now, they could have voluntarily dismissed it with prejudice. I don't know that they — Now, that's not what happened, right? You guys were very clear that this was without prejudice to further proceedings if we ruled differently. And that would have been a different question for finality. If they had dismissed count one with prejudice, I think they could not proceed with count two. Would they still be able to use their proof of — to proceed with the proof of claim? Yes. Because you wouldn't have — you wouldn't have gotten a victory on the merits that you could hold up as, you know, as an objection, I guess, however you want to phrase it, to the proof of claim, right? They would have still been able — their proof of claim would still be deemed allowed until we objected to it, and then there would be an adjudication of the objection to proof of claim if we chose to do that. But — Let me just rephrase that to make sure that I'm understanding what your position is. So I understand your colleague to say once dischargeability is decided, count one — there can be no redress of their injuries, in essence, because their proof of claim is going to get them whatever residual assets they have a right to, and that's all they can get in the bankruptcy. And outside the bankruptcy, it doesn't have any impact because it's dischargeable. Correct, Your Honor. If — So what's your — so why then — I mean, that's not technically mootness, but maybe we say in that context that count one is — there's no jurisdiction over count one once count two is resolved because count one — a ruling on count one can't redress any of the injury. But count one was not moot because it'll redress part of the injury. In what way? That's what I'm trying to ask. Because they'll receive a distribution of the assets based on the allowance of their proof of claim. But they're going to receive that — let's imagine instead what they did is they dismissed counts one and two in total, or they just never filed them, right? But if they dismissed both of them, wouldn't their proof of claim entitle them to their share, whatever that is, of the state's assets? Unless it was objected to. Unless it was objected to. And if it was objected to, then it would be resolved. Right. And your point is the difference that it would make is that if you had a resolution of count one in the adversary proceeding, in the proof of claim proceeding, that's maybe not certainly going to be enough, but that's going to solidify that proof of claim. If — I would — I would assert that they're identical. The allowance of liability is the same as — the finding of liability is the same as finding — the finding of liability in the adversary proceeding is the same as finding liability under the proof of claim. All you're doing is finding whether or not there's liability. So I would assert they're identical. But we don't typically think that a claim is — would redress the plaintiff's injury where the only thing it would do is have an impact on other litigation. And admittedly, this is odd, but that's just because bankruptcy is odd. Understood, Your Honor. It — what — what I think — what I think the answer is, is that they were required to litigate all of the counts that they brought in their adversary proceeding to completion before they can appeal. And because there was an underlying issue, because there was still subject matter jurisdiction over count one, because it's the functional equivalent of an objection to the proof of claim when I filed my answer, then they have to litigate count one to completion, according to Microsoft v. Baker and Kena v. Groupon and that line of cases. The — it's not the rule I would have invented. I certainly think it would be more efficient if we could have just appealed this up to the Fourth Circuit without having to go through trial. But my client's just as happy to stumble his way to victory as he is to get there on the merits. There's — there's simply — I don't see a distinction from Microsoft v. Baker at the end of the day. I don't see a distinction from Kena v. Groupon. And it's not like — The distinction your colleague wants to argue is the doomed exception, right?  It can have no impact in the real world because the proof of claim is already filed on the, you know, estate's assets. And count two means outside of the estate, he can't do anything with it. And so perhaps that's a pragmatic dooming instead of affinity, which was a legal dooming. But maybe that doesn't matter because redressability has some pragmatic aspect to it. Unlike Microsoft where it was still redressable, right? The individuals could still get money on their claims. And this is still redressable. He could still have gotten money on his proof of claim. And if we don't object to the proof of claim at the end of the day, he will get money on his proof of claim. But he's not yet gotten money on the proof of claim. Nobody has gotten money on their proof of claim yet. No, they have not finalized the bankruptcy. They can't do that until this is all resolved, so, as a practical matter. But are you or anybody else — and then I'll let you keep going, sorry. But are you or anybody else precluded from objecting to the proof of claim at this juncture? Like if you just — if we rule hypothetically that all of these go away in some magical way, could you then go and object to the proof of claim? Absolutely. There's no time limit to objecting to a proof of claim. As a practical matter, I didn't — we chose just to do this appeal. But we — It's effectively the same thing. One way or the other, if you win on count one, you're going to win on the proof of claim, whichever side prevails. Exactly, Your Honor. Your Honor, I hope that's addressed the procedural issues before the Court. I'd like to get to the substance of the matter. I just want to be sure that I understand what your position is with respect to — you think we do or do not have jurisdiction here. Just tell me that. I don't believe you have jurisdiction under Microsoft v. Baker. Okay. Yes. And I think the justiciability determination rests on the — I do believe that if you find it's more akin to affinity versus — Right. — then there is justiciability. But I think that requires you to find a final order under Microsoft v. Baker. And having read Microsoft v. Baker, I don't get there. I think there's certainly more — there was certainly more at stake for the Covites, you know, trying to litigate the liability under the proof of claim. There was certainly more at stake economically than there was available for the plaintiffs in Microsoft v. Baker who were suing over scratched CDs. And the Supreme Court said, no, you have to take — Maybe. That's the question. I mean, that's actually, I think, the question, right? Because in Microsoft, they were going to get a dollar, whatever it is. And, like, a dollar is real. Like, the question is here, is the resolution of count one going to make a literal red cent difference? Yes. And help — just one more time, and then I'll let you talk about the other stuff. But one more time, tell me, where is the red cent? Help me find it. Okay. So if their claim is allowed, then they are entitled to a distribution from the pot of assets that the bankruptcy trustee has found. If their claim is disallowed, they're not entitled to a distribution from that pot of assets. So the pot of assets is $15,000. That's what my client's partners in an LLC bought out from the trustee. So there's $15,000 there. Let's say there's — I don't know the amount of claims in the case, but let's say there's a — I get this. I get that far, right? But why is the resolution of count one going to matter there? Because he's got a proof of claim. It's almost like he's got two ways of getting the money. One's the proof of claim, and one's the count one. But they seem duplicative of each other. And maybe — I mean, there's nothing wrong with that. You can bring a state court suit and a federal suit for the same thing. So you can bring an adversary proceeding and a proof of claim proceeding. It's not really a proceeding. But anyway, you could bring both of those to reach the same end. And whichever one wins first, he'll take the money either way. And as a practical matter, if a trial on count one went forward, we probably would have consolidated with an objection to the proof of claim. But the — that's not what we chose to do. The — the adjudication of count one in the adversary proceeding is 100 percent absolutely determinative of liability under — under proof of claim. They're the same issue. If you're not liable under count one, there's no liability under the proof of claim. They're not entitled to any distribution. And that's what they argued to the bankruptcy court. That's why they said the bankruptcy court still had jurisdiction over count one when they opposed the motion to dismiss. And that makes sense. And when we moved to dismiss, we were thinking it was a no-asset case. I don't think I would have been able to make that argument had I known that there were going to be assets in the case because we would have been stuck litigating the amount of the proof of claim. I'm happy to give you a few minutes to talk about the — the merits. Thank you, Your Honor. The — the underlying statute that the plaintiffs are suing under is a strict liability statute. It's not — it says if you take advance payment of any deposit for home renovation work in the District of Columbia, and you don't have a license, you have to give it back. It doesn't matter if you did the work. It doesn't matter if you did the work competently. It doesn't matter if you knew about the licensing regime. It doesn't matter if your customer knew you were unlicensed. You simply have to give all of the money back without set-off for the fact that you paid your subcontractors all of the money, without set-off for the fact that you were unpaid certain amounts due under the contract. It is a strict liability statute, and liability is imposed without regards to any fraud performed by the — by the contractor. My — my client had a Virginia contractor's license. That's not a defense. This is all set forth in the case of Nixon v. Hansford. And the plaintiffs call that — they say it's an intentionally draconian statute, and I agree. But the very same draconian nature of that statute belies any argument that any fraudulent misrepresentation alleged by the plaintiffs is the proximate cause of any disgorgement damages that the plaintiff is seeking. They are not seeking damages for faulty construction. They haven't chosen to make that claim. All they are seeking is disgorgement under a strict — under a strict liability statute. They're not saying we paid $58,000 and the work done was only $25,000. They're saying he didn't have a license. He told us he didn't have a license. He told us he had a license. Therefore, give us back $58,000 for fraud. Now, that license — that license is not any indication of competence in the field of contracting. You don't have to take a test to get that license. You don't have to apprentice with anybody. You don't have to have any experience as a contractor. What you have to do is you pay a fee, you post the bond, and you get property damage insurance and public liability insurance. There's no — there's no determination that you're competent as a contractor. And so for the Cavites to say that they relied on that, that's the same argument that was made in the In re Carpenter case in the District of Columbia. And In re Carpenter followed the case of In re Saban from the Ninth Circuit and said these strict liability licensing regimes simply do not give way to a fraud judgment under Section 523 of the Bankruptcy Code. If Mr. Verstandick's clients could show that my client said he was experienced and he had, say, a Virginia license which requires an examination and, you know, he lied about that, then that would be a material misrepresentation. That is — and if they suffered actual damages, which is not part of their complaint. All they're seeking in this case is the disgorgement of the $58,000 that they paid my client in advance, and my client worked on that project for over a year. And the representation that he had a license simply could not be the proximate cause of any disgorgement damages that they could allege. The representation of competence would be a different thing. The representation that he had, like in the Pleasance case where he said, I've been a licensed architect for 20 years with all this experience, that would be different. But a D.C. license, which is basically just you pay a fee and you get it if you don't have a criminal record, it's only meant to protect against fly-by-night contractors who are looking to take the money and leave. That's all it protects against. There's no — there's no insurance for shoddy work, which is the damages that they allege. I see my time is up, so I will rest my case. Thanks, counsel. Before you turn to the merits, can you start by talking about your representation to the court that even if the debt was found to be dischargeable, as it was, that you were still entitled to success on count one because, quote, there will be, in fact, monies to distribute from this estate? Yeah. That — I mean, that's the argument, it seems to me, that fundamentally the adversary proceeding is the corollary to the proof of claim. Your Honor, the easiest answer to that is the one I like in the least. I was wrong. I was wrong there and I'm right now. And Mr. Pisano was right then and he's wrong now. But let me give the easy answer. He had indicated that if he prevailed in the adversary proceeding, that would have served to defeat my client's proof of claim. While he's pragmatically correct, he's technically wrong. There is one step, albeit perhaps a ministerial one, which is he would still have to object. Now, I'll admit, having lost — you know, if we lost on the merits, the objection would be, you know, res judicata would reign supreme. It would be fait accompli. But he would still have to object. A notice of objection would still have to be sent to everyone. There would still have to be some hearing or at least some order passed. And I am not aware of any precedent, and I think this was intimated by one of the questions, where a case or controversy is found to continue to exist in one judicial proceeding solely for purposes of imbuing another proceeding with res judicata. That is an entirely wayward concept and one that admittedly stretches my feeble mind perhaps further than it ought to be stretched. And I do not know that that's really a case or controversy within Article 3's — Well, isn't it — I mean, you can either — you could litigate Count 1 and have a jury or the court say, you are entitled to the money. And that's redressability, right? You say, we want the money, and you could have a court say, you get the money. Or you could wait and just put forth your proof of claim. But how does the fact that there's an alternative way you could decide to do it make the Count 1 option lack redressability? Your Honor, there's a third way we could have done it, too, and I think that goes to the answer. I could have sought stay relief and asked — I'm sorry. There's a third way we could have done it, and I think that goes to the answer, which is we could have simply sought stay relief for purposes of having the Superior Court of the District of Columbia enter judgment in the pending action there, which was fairly far along. Now, let's assume in a hypothetical universe that's what we did. So we filed a one-count complaint to establish that the obligation is not dischargeable, and we sought and received stay relief to go liquidate the obligation in D.C. Superior Court. Once the bankruptcy court ruled that it was dischargeable, the D.C. Superior Court case would have become moot. I understand the same res judicata argument could be made for purposes of a claim objection, but it's a very different standard on a claim objection. Burdens are different in the context of a claim objection. And again, I go back to I don't believe that proceeding with adversarial litigation merely to maintain a res judicata posture in a similar but distinct context is consistent with the article. Is it a matter that they're part of the same case? So these are different proceedings that are part of the same case, right? And so we – I get your point. I'll – maybe you're right if the proceeding was in the D.C. Superior Court, right? But these are – they are different proceedings, but they are all part of the one bankruptcy case, right? And so that's like the court is, like, deciding right-hand, left-hand. They are different proceedings, but they are the same case. Yes, Your Honor, but I don't believe that – that is not technically true. I don't mean to dispute the obvious. But an adversary proceeding has its own case number, and more importantly, it has its own service list. If I were to file a motion in the adversary proceeding, CMECF would send a copy to Mr. Fisano and presumably to the clerk and someone in the judge's chambers. If I were to file a motion in the main bankruptcy case, Mr. Fisano would get it, the trustee would get it, every other creditor who had entered an appearance. So that's – I mean, that's pragmatically fine, but it is odd to think about this in the – it's one case. So if the district court was deciding – had both a TRO and a preliminary injunction in front of it, right, the fact that one might solve or the other might solve doesn't change it because it's all part of the same case. And this is – like, I think – I get your argument if we're in D.C. superior court with the claim and you sought a relief from the stay. But given that we're part of the same case, I'm having a little trouble understanding why we ought to think about it that way. Your Honor, the reason I made the service list comment is because if we succeeded in the adversary proceeding, it would not have a preclusive effect upon an objection to our claim brought by any other creditor or of a trustee because only – Unless they had actual notice of it, right? So unless they were following the bankruptcy. Yeah, which, you know, would be a fact-intensive thing. I recognize I've gone over my time. May I give – You've got – I will definitely give you a few minutes to talk about the merits of your claim, if that's okay. Thank you, Your Honor. It seems only, like, marginally fair. But please, go ahead. Very basically, 523a2 provides that any debt for money to the extent obtained by false pretenses, a false representation, or actual fraud, end quote, is not dischargeable. The majority of case law talks about actual fraud. Much of what we briefed deals with actual fraud. And I think that does a fundamental textual disservice to the words false pretenses, a false representation, and or. You don't need to have a claim for fraud, which means you don't need to prove the elements of common-law fraud to establish non-dischargeability. You must merely show that there is a debt, that it is for money, and that the money was obtained by false pretenses. Do you agree that that last piece includes a requirement that the misrepresentation proximately caused the damages? That's what all the other courts say. Your Honor, I don't agree, but even if it did, I believe that the reasonableness of reliance would be a question of fact for the fact-finder, and thus it would have been inappropriate at the 12b6 stage to dismiss this. But I don't believe that. I recognize that is what a number of courts have said. We have pointed to the world's shortest Southern District of New York opinion that is, I believe, all of six sentences that seems to intimate that you must only show transactional causation and not laws causation without any explanation thereof, and I will handily admit that is the only authority I can point to, other than the text of the statute itself, which is the authority I'd rather have. The word or must have some meaning, and if we're merely going to conflate false pretenses and a false representation with the word's actual fraud, we have discovered a healthy amount of surplusage in the Bankruptcy Code, and that doesn't seem a sensible means of going about it. I'd also note the De La Cruz Court said that the statute is to be, quote --" It's not just conflating fraud with misrepresentation. The words are obtained by, right? Obtained by, misrepresentation, or fraud. And so does obtained by include a requirement that one proximally caused the other? You obtained it by your misrepresentation. Your Honor, I would agree that if Mr. Bott has said to my clients, I'm an unlicensed contractor and I'm a New York Yankees fan, we could not bring suit if it turned out he was a Mets fan. That would not get us anywhere in a 523 prism. So I think there does have to be some causal nexus that must survive a motion to dismiss, but here my clients have plainly alleged that they would not have hired Mr. Bott but for the representation of licensure. Now, the comeback through the case law has been, well, is that representation and reliance a reasonable one? Should we be relying upon his claim of licensure or should we just acknowledge that understanding whether someone's licensed or not in the District of Columbia is of no moment whatsoever? And it seems to me that is at best a question for the factfinder and at worst not grounds upon which to disrupt a 523 claim. But the point is that it doesn't matter for proving your D.C. claim, whether they relied or didn't rely or was reasonable or not reasonable. No one has to prove that to collect this disgorgement. Correct, Your Honor. So there's a Supreme Court case which is Archer v. Warner from 2003. It's a Breyer opinion where someone had brought suit for fraud and they settled. There's a settlement agreement. It contains global mutual releases and an obligation to tender funds thereunder. And lo and behold, there's a breach of the settlement agreement, and the obligated party filed bankruptcy relief, a pun owing about $100,000. And the question in front of the Supreme Court was whether or not that obligation is subject to 523A2 because it's not a debt for fraud. It's a debt for breach of contract. In fact, any claims for fraud have been released, waived, and let go of through the settlement agreement. And the Supreme Court found that it is within the ambit of 523A2. I'm four minutes in changeover. I think that's further than I bargained for. But the difference is that Supreme Court case, right, they had to prove that there was some – it's not strict liability, right? They weren't talking about this D.C. municipal code. Correct. We will still have to show that there was a false representation. We still have to show by a preponderance of the evidence that Mr. Bott lied about being licensed, and we also will have to show by a preponderance of the evidence that we would not have engaged him but for that lie. I agree. We've got our work to do once we clear the motion to dismiss. But I maintain we are entitled to clear our motion to dismiss and have a fact finder make these determinations, Your Honor. Thank you, counsel. We'll be happy to come down and greet you, and then the clerk can adjourn court for the day.
judges: Julius N. Richardson, Allison J. Rushing, Diana Gribbon Motz